**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENNETH I. DEANE, a single man, | No. 21-35184 |
| | 21-35248 |
| Plaintiff-Appellee, | |
| | D.C. No. 2:19-cv-00722-MJP |
| v. | |
| | |
| PACIFIC FINANCIAL GROUP INC., a Washington corporation; MEGAN P. MEADE, an unmarried woman; NICHOLAS B. SCALZO, a married man; JAMES C. MCCLENDON, a married man; JOAN A. MCCLENDON, a marital community; GAETAN T. SCALZO, a married man; SHERRIE SCALZO, a marital community, | MEMORANDUM[*] |
| | |
| Defendants-Appellants. | |

| | |
|---|---|
| KENNETH I. DEANE, a single man, | No. 21-35202 |
| | |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-00722-MJP |
| | |
| v. | |
| | |
| PACIFIC FINANCIAL GROUP INC., a Washington corporation; MEGAN P. MEADE, an unmarried woman; NICHOLAS B. SCALZO, a married man; JAMES C. MCCLENDON, a married man; JOAN A. MCCLENDON, a marital community; | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

GAETAN T. SCALZO, a married man;
SHERRIE SCALZO, a marital community,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted February 10, 2022
Seattle, Washington

Before: BYBEE, BEA, and CHRISTEN, Circuit Judges.

Kenneth Deane sued his former employer, the Pacific Financial Group (TPFG), alleging that TPFG paid him smaller "termination payments" than he was owed under his employment contract; Deane brought a breach of contract claim and a claim under Washington Rev. Code § 49.52.050. After a bench trial, the district court found for Deane on his contract breach claim and for TPFG on Deane's Washington state law claim. TPFG appeals the judgment for Deane on Deane's claim of contract breach, arguing that the district court incorrectly interpreted Deane's employment contract.[1] Deane cross-appeals the judgment for TPFG on Deane's Washington state law claim. Because the parties are familiar with the facts, we recite only those necessary to decide the appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[1] TPFG also appeals the district court's decision to award attorney's fees to Deane, but only on the basis that the district court's merits decision was wrong.

First, Deane's contract interpretation claim. We review a "district court's interpretation of contract provisions de novo," *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011), but when a district court "uses extrinsic evidence to interpret a contract, we review [the district court's] findings of fact for clear error," *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).

Deane's contract entitled him to termination payments based on all investor clients "procured by [Deane]" in his territory. The parties dispute whether this means all clients in Deane's territory (as Deane argues) or only the clients in sub-regions of Deane's territory that were not served by an external wholesaler who worked under Deane's supervision (as TPFG argues).

The ordinary meaning of "procured"—to "bring about, effect, or cause," Black's Law Dictionary (11th ed. 2019)—supports neither party's interpretation. Rather, the ordinary meaning suggests that the person who convinced a client to invest with TPFG is the person who "procured" that client. But this interpretation of Deane's contract is impossible to implement because TPFG did not record who was responsible for acquiring each individual client, and neither party argues for this interpretation. Still, Deane's interpretation has some textual basis. Deane could be said to have "procured" all investor clients in his territory because he supervised and assisted all the salespeople and thus has some causal connection to every client

3

acquired.

Because the text of Deane's employment contract provides us with no clear answer, Washington state law authorizes us to consider extrinsic evidence of the parties' expressed intent. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266 (Wash. 2005). The extrinsic evidence of the contract's meaning supports Deane's interpretation. The district court found that "Deane and [TPFG Co-CEO] Meade . . . agreed that the termination payments would be based on the assets under management (AUM) in Deane's territory."[2] Further, TPFG and Deane did not renegotiate his termination payments even though they renegotiated his commissions, strengthening the inference that Deane's contract still entitled him to termination payments based on all clients in his assigned territory, even after TPFG hired additional salespeople to work under Deane. All told, Deane's interpretation of the contract is the stronger of the parties'.[3] We thus agree with the district court's interpretation of Deane's employment contract and affirm the judgment for Deane

---

[2] TPFG argues that Meade and Deane had no such agreement but the district court found that they did, and we review the district court's factual findings for "clear error." *Marlyn Nutraceuticals*, 571 F.3d at 878. TPFG gives us no reason to find that the district court's said factual finding was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

[3] We also reject TPFG's argument that Deane's termination payments should be calculated as "one-half of the percentage" that he earned in commissions. This interpretation of Deane's contract finds no support in either the contract's text or the available extrinsic evidence.

on his breach of contract claim.[4]

Second, Deane's claim under Washington state law.  Under Washington state law, an employer that "willfully" underpays its employee is liable for double damages.  *See* Wash. Rev. Code §§ 49.52.050, 49.52.070.  But even if an employer does pay an employee less than the amount specified in the parties' employment contract, the employer does not do so "willfully" (and thus is not liable under § 49.52.050) if the employer had a "genuine belief" in a "fairly debatable" reason for underpaying the employee.  *See Hill v. Garda CL Nw., Inc.*, 424 P.3d 207, 211 (Wash. 2018).   The district court found that Deane and TPFG's contract interpretation dispute was "fairly debatable" and that TPFG had a "genuine belief" in its position.  We agree.

In a suit brought under § 49.52.050, the "'fairly debatable' inquiry is a legal question about the reasonableness or frivolousness of an argument that [an appellate court] review[s] de novo." *Hill*, 424 P.3d at 212.  We are convinced that the parties' dispute was fairly debatable.  As discussed above, the text of Deane's contract did not clearly settle the parties' interpretive dispute.  The district court properly looked to extrinsic evidence to interpret the contract and we find the issue of the proper

---

[4] TPFG challenged the award of attorney's fees to Deane on the sole basis that Deane should not have prevailed on Deane's breach of contract claim.  Because we affirm the breach of contract claim, we also affirm the district court's decision to grant Deane attorney's fees.

interpretation of the written contract not clear-cut. The district court thus properly found that the contract interpretation question is "fairly debatable."

Whether TPFG had a "genuine belief" in its position is a question of fact, *see id.*, and we review factual findings for clear error. The district court found that TPFG and its employees genuinely believed in the company's interpretation of Deane's contract and Deane offers no compelling reasons why that conclusion was clearly erroneous. Indeed, Meade even corrected of her own accord a separate mistake that TPFG made in calculating Deane's termination payments that had erroneously reduced Deane's payments. This belies Deane's argument that TPFG contested the value of Deane's termination payments in bad faith rather than based on a "genuine belief" in its position.

**AFFIRMED**.